IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


TERRI A. FIELD,

          Plaintiff,

vs.                                    Case No. 10-4056-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

          Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  Ray
v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial
gainful activity (SGA).  The claimant's physical or mental
impairment or impairments must be of such severity that they are
not only unable to perform their previous work but cannot,
considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

This case has a very long history. Plaintiff filed applications for disability insurance benefits and supplemental security income on June 13, 2003. Plaintiff had previously filed an application for disability benefits on July 31, 2002, which was denied on November 26, 2002. This application was subject to reopening if the plaintiff was found to be disabled (R. at 13).

On August 16, 2005, administrative law judge (ALJ) George M. Bock issued his 1st decision (R. at 13-24). The ALJ found that

4

plaintiff can perform other work in the national economy, and was therefore not disabled (R. at 22-23).  Plaintiff sought judicial review of the ALJ decision.  On June 19, 2007, the court issued an order reversing the decision of the Commissioner and remanding the case for further hearing (R. at 408-410, 412-436; <u>Field v. Astrue</u>, Case No. 06-4126-SAC (hereinafter referred to as <u>Field I</u>).  In <u>Field I</u>, the court found numerous errors by the ALJ in his analysis of the opinions of Dr. Spangler, a treating physician (R. at 428-432); the court also found errors in the ALJ's credibility analysis (R. at 434-436).

On April 23, 2008, ALJ George M. Bock issued his 2nd decision (R. at 400-407).  Again, the ALJ found that plaintiff can perform other work in the national economy, and was therefore not disabled (R. at 406-407).  Plaintiff sought judicial review of the 2nd ALJ decision.  On May 5, 2009, the court issued an order reversing the decision of the Commissioner and remanding the case for further hearing (R. at 1153-1186; <u>Field v. Astrue</u>, Case No. 08-4079-JAR (hereinafter referred to as <u>Field II</u>).  In <u>Field II</u>, the court found that the ALJ had erred in the following particulars: 1) in the analysis of plaintiff's depression (R. at 1161-1172), 2) in the analysis of the medical opinions of Dr. Spangler, Dr. Curtis, and two nonexamining physicians (R. at 1172-1180), and 3) by failing to explain why the medical expert's opinion should be accorded greater weight than the opinion of the

treating physician (R. at 1183-1184).

On March 18, 2010, a 3rd ALJ decision was reached by ALJ Guy E. Taylor (R. at 1121-1135).  Plaintiff alleges that she has been disabled since May 11, 2003 (R. at 1121).  Plaintiff is insured for disability insurance benefits through December 31, 2008 (R. at 1123).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 1124).  At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease (DDD) of the lumbar spine, coccydynia, asthma, obesity, and depression (R. at 1124).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 1124).  After determining plaintiff's RFC (R. at 1125), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 1133).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 1134-1135).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 1135).  Plaintiff has again sought judicial review of the ALJ decision.

## III.  Did the ALJ err in his consideration of the medical opinion evidence?

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of

6

treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory

7

diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Treating source opinions on issues that are reserved to the

Commissioner[1] should be carefully considered and must never be ignored, but they are never entitled to controlling weight or special significance.  Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.  SSR 96-5p, 1996 WL 374183 at *2-3.

Dr. Spangler is plaintiff's treating physician.  Dr. Spangler has provided medical treatment for the plaintiff from 2002-2009 (R. at 154-182, 195-275, 473-474, 743-1077, 1646-1694, 1780-1801).  On December 26, 2004, Dr. Spangler provided a medical opinion regarding plaintiff's ability to do work related activities (physical) (R. at 358-361).  Among his findings were the following:

> 1. Dr. Spangler indicated he could not assess plaintiff's maximum ability to lift and carry.
>
> 2. Plaintiff could stand/walk for 2-4 hours in an 8 hour day.
>
> 3. Plaintiff could sit for 2 hours during an 8 hour day.
>
> 4. Plaintiff must be able to shift at will

---

[1]Issues reserved to the Commissioner include: (1) whether an claimant's impairment meets or is equivalent in severity to a listed impairment, (2) a claimant's RFC, (3) whether a claimant can perform past relevant work, and (4) whether a claimant is disabled.  SSR 96-5p, 1996 WL 374183 at *2.

from sitting or standing/walking.

5. Plaintiff can never stoop (bend) or
crouch, and can occasionally twist, and climb
stairs and ladders.

6. Plaintiff has limitations in her ability
to reach and push/pull.

7. Plaintiff must avoid moderate exposure to
fumes, odors, dusts, etc., and must avoid
concentrated exposure to hazards.

8. Plaintiff has limits on kneeling and
crawling, especially in getting up.

9. Plaintiff will miss work three or more
times a month, likely for more than one day
each.

(R. at 358-361).

In a letter dated March 5, 2008, Dr. Spangler made the
following clarifications regarding his earlier opinion:

Addendum #1.  To clarify, it was my opinion
that Mrs. Field could sit a total of about 2
hours a day, could stand and walk with breaks
2-4 hours of an 8 hour day, and would need to
lie down at unpredictable times for a total
of 2-4 hours during an 8 hour day.

Addendum #2.  It is my opinion, after
continuous medical treatment for years, that
Mrs. Field's restrictions remained the same
when I last saw her for back pain 8/27/07.
She has indeed been difficult to treat
medically.  There are no substantial changes
to my opinion of 12/26/04 with the exception
of the minor clarification above.

(R. at 1091).

The record also contains four other medical opinions
regarding plaintiff's RFC.  The first is a state agency physical

10

RFC assessment prepared on August 19, 2003, which limited plaintiff to medium work (R. at 183-190). The second opinion is a consultative examination provided by Dr. Curtis on December 14, 2007 (R. at 1078-1082). Dr. Curtis indicated that plaintiff had limitations basically consistent with light work (R. at 1083-1088). The third opinion is the testimony on January 31, 2008 by Dr. Axline, a medical expert who reviewed the records but did not examine the plaintiff (R. at 1098-1108). Dr. Axline limited plaintiff to lifting 25 pounds (R. at 1101), and opined that plaintiff had no limit to sitting as long as she could get up "every once in a while" or "every so often" (R. at 1101-1102). The fourth opinion is the testimony on October 27, 2009 by Dr. Brovender, a medical expert who reviewed the records but did not examine the plaintiff (R. at 2042-2050). Dr. Brovender testified that it was his opinion that there was no evidence in the record to support Dr. Spangler's opinion that plaintiff would miss three or more days a month (R. at 2046-2047). He indicated that he generally did not agree with Dr. Spangler's limitations (R. at 2047). However, Dr. Brovender offered no opinions regarding plaintiff's RFC.

The ALJ found that plaintiff had an RFC limiting her to sedentary work, with some additional limitations (R. at 1125). The ALJ indicated that he was giving little weight to Dr. Spangler's opinions (R. at 1131-1133). The ALJ gave some weight,

11

but less than substantial weight, to the opinions of Dr. Curtis, the consultative examiner, noting that Dr. Curtis indicated that there had been no back evaluations since 2003, when in fact there had been such evaluations since that date (R. at 1132). The ALJ gave some weight, but not substantial weight, to the state agency RFC assessment (R. at 1132). The ALJ gave significant weight to the opinions of the two medical experts, Dr. Axline and Dr. Brovender (R. at 1132-1133).

Plaintiff argues that the ALJ erred in his analysis of the opinions of Dr. Spangler. In his decision, the ALJ stated the following:

> The undersigned incorporates by reference, as if fully set forth herein, the medical summaries and medical analyses set forth in the prior decisions in this case issued by Administrative Law Judge George M. Bock on August 16, 2005 and April 23, 2008 (Exhibits 4A, 7A).

(R. at 1127). Thus, the ALJ expressly incorporated the medical analyses set forth in the prior two decisions issued by ALJ Bock. However, in Field I, the court found "numerous problems with the ALJ's analysis of Dr. Spangler's opinions" (R. at 428). The court then set forth five specific errors by the ALJ in his analysis of Dr. Spangler's opinions which required that the case be remanded (R. at 428-432). Furthermore, in Field II, the court found an error in one of the ALJ's reasons for discounting the opinion of Dr. Spangler, and directed the ALJ, on remand, to cite

to appropriate medical authority to support his assertion (R. at 1177-1178 & n.5).  Thus, despite the fact that in both Field I and Field II the court found numerous errors in the ALJ's analysis of the opinions of Dr. Spangler in the first two ALJ decisions, the ALJ in the 3rd decision expressly incorporated into his decision the medical analyses set forth in the 1st and 2nd ALJ decisions.

Under the law of the case doctrine, an administrative agency, on remand from a court, must conform its further proceedings in the case to the principles set forth in the judicial decision.  The law of the case doctrine only applies to issues previously decided, either explicitly or by necessary implication.  Poppa v. Astrue, 569 F.3d 1167, 1170 (10th Cir. 2009).  Once a court decides an issue, there must be compliance with the reviewing court's mandate.  The administrative agency, on remand from a court, must conform its further proceedings in the case to the principles set forth in the judicial decision unless there is a compelling reason to depart.  Grigsby v. Barnhart, 294 F.3d 1215, 1218 (10th Cir. 2002).

Issue preclusion is a principle whereby courts enforce finality of judgment and preclude re-litigation of issues previously decided.  Pursuant to the doctrine of issue preclusion, when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again

13

be litigated between the same parties in any future lawsuit. When the doctrine of issue preclusion applies, neither the Commissioner nor the court may make a finding contrary to the findings necessarily decided by the prior courts' decisions without an intervening change in legal conditions.  Frost v. Astrue, 627 F. Supp.2d 1216, 1223-1224 (D. Kan. 2008); Smith v. Astrue, 507 F. Supp.2d 1170, 1176 (D. Kan. 2007).

Under either the doctrine of the law of the case or issue preclusion, once a court has decided an issue, there must be compliance with the reviewing court's mandate, and the ALJ may not assert a finding contrary to the findings contained in a final and valid judgment entered by the court.  Both Field I and Field II are final and valid judgments of the court.  In both Field I and Field II, the court found errors by the ALJ in his analysis of the opinions of Dr. Spangler.  However, despite the prior rulings of the court that expressly found errors in the 1st and 2nd ALJ decisions regarding the analysis of the opinions of Dr. Spangler, and remanding the case in order to correct those errors, the 3rd ALJ decision inexplicably incorporated into his opinion the medical analyses in the 1st and 2nd ALJ decisions. The court holds that the incorporation of the medical analyses in the 1st and 2nd ALJ decisions of the opinions of Dr. Spangler which were found to be erroneous is barred by the law of the case and/or issue preclusion.

14

Although defendant argues that it appears clear from the ALJ's decision that he did not intend to incorporate the parts of the medical analyses the court found flawed in the earlier ALJ decisions (Doc. 22 at 21), there is no indication in the 3rd decision that the ALJ did not intend to incorporate those parts of the analyses of Dr. Spangler's opinions in the 1st and 2nd ALJ decisions that were found by the court in Field I and Field II to be erroneous.  In fact, the ALJ indicated that, without any qualifications, he was incorporating by reference, as if "fully set forth therein," the medical analyses in the two prior decisions (R. at 1127).  Later, when the ALJ incorporated the credibility analyses from the two prior decisions (R. at 1130, infra at 21-22), the ALJ even more clearly stated that, with one exception regarding the onset date, that he found "all of Judge Bock's other credibility analyses to be well reasoned and persuasive and adopts them herein" (R. at 1130).  Defendant's argument on this issue is found to be without merit.

The next issue raised by the plaintiff concerns the finding by Dr. Spangler that he could not assess or measure plaintiff's ability to lift and carry, but was able to assess or measure the other functional areas (R. at 358).  The ALJ stated that "This inexplicable inconsistency causes the undersigned to give little weight to Dr. Spangler's opinions" (R. at 1131).  However, the ALJ cites to absolutely no evidence to support the ALJ's

15

assertion that Dr. Spangler's inability to assess or measure
plaintiff's ability to lift and carry was inconsistent with his
ability to assess or measure other functional areas.
Furthermore, it is not at all clear why the ALJ would find it
inconsistent that Dr. Spangler was able to assess or measure
certain functional areas, but not others.  Such speculation is
clearly an improper basis for giving little or no weight to the
opinions of Dr. Spangler.  Robinson v. Barnhart, 366 F.3d 1078,
1082 (10th Cir. 2004); McGoffin v. Barnhart, 288 F.3d 1248, 1252
(10th Cir. 2002).

Even if a person could reasonably conclude that Dr.
Spangler's report was inconsistent on this point, the court in
Field I noted that the ALJ had concluded that Dr. Spangler's
report was "internally inconsistent" on another point (R. at
430).  The court, citing to 20 C.F.R. § 404.1512(e)(1) and SSR
96-5p, held that plaintiff would need to recontact Dr. Spangler
in order to resolve the inconsistency or conflict (R. at 430-
431).  Thus, to the extent any inconsistency existed, Field I
clearly establishes that the ALJ erred by failing to recontact
Dr. Spangler in order to resolve the inconsistency or conflict.

The next issue concerns the opinions expressed by Dr.
Spangler on how much work plaintiff would miss because of his
impairments.  On the form, Dr. Spangler was asked how often would
plaintiff's impairments or treatment result in plaintiff being

absent from work.  Dr. Spangler circled two responses: 1) "About three times a month" and 2) "More than three times a month." After those two answers, Dr. Spangler wrote the following: "Likely, more than a day each" (R. at 361).  In his decision, the ALJ stated that Dr. Spangler's annotation and two circled choices are:

> confusing at best and conflicting at worst on
> this issue, but it appears that Dr. Spangler
> was trying to communicate his opinion that
> the claimant would miss work at least one day
> a month on average due to her impairments or
> treatment.

(R. at 1131).  However, at the hearing, the ALJ did not find that Dr. Spangler's finding on this issue was either confusing or conflicting when asking this question to Dr. Brovender:

> Q (by ALJ):...at item number 12 it says, on
> average how often do you anticipate that your
> patient's impairments or treatment would
> cause your patient to be absent from work?
> And he indicates three times or more times a
> month.  Do you find evidence of that in the
> record?

(R. at 2046-2047).  As the ALJ indicated at the hearing, the court finds nothing confusing or conflicting in the statement by Dr. Spangler on this issue.  By circling both answers, Dr. Spangler is indicating that plaintiff would miss three or more times a month.  To the extent that the ALJ relied on this allegedly confusing and conflicting answer to give less weight to the opinions of Dr. Spangler, the ALJ clearly erred.

Finally, the ALJ stated that it appears that Dr. Spangler's

17

opinions are based on his subjective belief of the claimant's subjective statements to him regarding her pain, and not upon the objective medical evidence (R. at 1133).  In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

Subsequently, in the case of Victory v. Barnhart, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's opinion was based on claimant's own subjective report of her symptoms impermissibly rests on his speculative, unsupported assumption. See Langley, 373 F.3d at 1121 (holding that ALJ may not reject a treating physician's opinion based on speculation). We find no support in the

> record for the ALJ's conclusion. Nothing in
> Dr. Covington's report indicates that he
> based his opinion on claimant's subjective
> complaints, and the ALJ's finding ignores all
> of Dr. Covington's examinations, medical
> tests, and reports. Indeed, the ALJ's
> discussion of Dr. Covington omits entirely
> his March 22, 2001 examination and report.
> His April 3, 2001 statement might well have
> been based on his recent first-hand
> examination and observation of claimant
> during this examination, performed less than
> two weeks earlier, rather than on claimant's
> subjective complaints, as the ALJ speculated.
> See Morales v. Apfel, 225 F.3d 310, 317 (3d
> Cir.2000) (noting that the treating
> physician's opinion may "reflect expert
> judgment based on a continuing observation of
> the patient's condition over a prolonged
> period of time").

121 Fed. Appx. at 823-824.

In the case before the court, the ALJ had no legal or evidentiary basis for finding that Dr. Spangler's opinions were based on plaintiff's subjective complaints. Nothing in his report indicates that he relied only on plaintiff's subjective complaints. This finding ignores all of Dr. Spangler's examinations, medical tests and reports in seven years of treatment. Furthermore, Dr. Spangler, in setting forth his opinions regarding plaintiff's RFC, referenced specific medical findings in the record from other physicians in support of the limitations he set forth (R. at 359). As in Langley and Victory, the ALJ in this case improperly rejected the opinions of Dr. Spangler based on the ALJ's own speculative conclusion that the report was based only on plaintiff's subjective complaints.

19

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th Cir. 2005); <u>White v. Barnhart</u>, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  The medical opinion evidence from the state agency RFC assessment by non-examining physicians, Dr. Curtis, a consultative physician, and Drs. Axline and Brovender, non-examining medical experts, do not support the limitations set forth by Dr. Spangler, plaintiff's treating physician.  However, in light of the numerous errors by the ALJ in his analysis of the opinions of Dr. Spangler, a treating physician whose opinions are generally entitled to greater weight, the court finds that substantial evidence does not support the findings of the ALJ in regards to the relative weight given to the opinions of the various medical sources.

**IV.  Did the ALJ err in his credibility analysis?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  <u>Owen v. Chater</u>, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony.  Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

In his decision, ALJ Taylor stated the following:

> As for the required credibility analysis in this case, the undersigned incorporates by reference, as if fully set forth herein, the credibility analyses contained in both of Judge Bock's prior decisions in this case, excluding the following portion of the

21

> credibility analysis in Judge Bock's most
> recent decision. As pointed out by the
> District Court, Judge Bock incorrectly stated
> that the claimant's work activity in 2002 and
> 2003 demonstrated her ability to perform
> work, even though it did not rise to the SGA
> level (Exhibit 7A, p.6). Judge Bock committed
> this error because throughout his decision he
> used the claimant's original alleged onset
> date of October 5, 2001 instead of her
> amended alleged onset date of May 11, 2003.
> Other than this incorrect portion of Judge
> Bock's credibility analysis [in the 2nd ALJ
> decision], <u>the undersigned finds all of Judge
> Bock's other credibility analyses to be well
> reasoned and persuasive and adopts them
> herein</u>.

(R. at 1130, emphasis added).

However, in <u>Field I</u>, the court found two specific errors

with the ALJ's credibility analysis in the 1st ALJ decision which

needed to be addressed when the case was remanded (R. at 434-

436).  The first error was the ALJ's failure to cite to any

medical evidence to support his assertion that plaintiff's

symptoms appear to be out of proportion to the objective findings

(R. at 434).  In light of this finding of error, the ALJ in the

3rd decision could not simply incorporate this finding, but

needed to cite to medical evidence to support this previous

finding.  In the 3rd decision, the ALJ found that plaintiff's

symptoms were not credible to the extent that they were not

supported by the objective medical evidence, the medical opinions

of both medical experts (Dr. Axline and Dr. Brovender), and the

state agency medical consultants (R. at 1127).  The ALJ gave

significant weight to the opinions of Dr. Axline and Dr.
Brovender because he found that their opinions were consistent
with the objective medical records (R. at 1133).  Therefore, the
court finds that the ALJ in the 3rd decision did cite to medical
evidence to support this earlier finding.

The second error noted in <u>Field I</u> was the ruling of the
court that the ALJ, in finding that plaintiff's actual activity
level appeared to exceed those described during her testimony,
impermissibly ignored the evidence as a whole regarding
plaintiff's daily activities, while choosing instead to abstract
select pieces of evidence favorable to the ALJ's position.  The
court noted that the ALJ repeatedly failed to mention evidence in
the record setting forth various limitations in plaintiff's daily
activities (R. at 435-436).  As noted previously, once a court
has decided an issue, there must be compliance with the reviewing
court's mandate, and the ALJ may not assert a finding contrary to
the findings contained in a final and valid judgment entered by
the court.  Although the ALJ did summarize in his 3rd decision
plaintiff's testimony at the 3rd hearing regarding the limited
nature of some of her daily activities (R. at 1126-1127), the ALJ
in the 3rd decision nonetheless found that "all" of the ALJ's
credibility analysis in his 1st decision was "well reasoned and
persuasive," including the finding in the 1st decision that
plaintiff's actual activity level appears to exceed those

23

described during her testimony and adopted them in the 3rd

decision (R. at 435).  In the 3rd ALJ decision, the ALJ failed to

expressly reevaluate the ALJ finding from the 1st decision in

light of the additional evidence of the limited nature of many of

her daily activities set forth in Field I and in plaintiff's most

recent testimony.  Instead, and without explanation, the ALJ

adopted the entire credibility analysis from the 1st ALJ

decision.  The importance of considering plaintiff's limitations

in her daily activities was recently highlighted in two recent

decisions in the 10th Circuit which found error when the ALJ

mischaracterized the extent of plaintiff's daily activities,

ignoring the qualifications and limitations that were reported.

Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011);

Sitsler v. Astrue, 410 Fed. Appx. 112, 117 (10th Cir. Jan. 10,

2011).  Limited daily activities clearly do not establish that

plaintiff is able to engage in substantial gainful activity, and

they are not inconsistent with claims of disabling pain.

Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993);

Draper v. Barnhart, 425 F. 3d 1127, 1130-1131 (8th Cir. 2005).

In light of the ruling in Field I, the court holds that the ALJ

erred by incorporating the entire credibility analysis from the

1st ALJ decision into the 3rd ALJ decision (particularly the

flawed credibility analysis regarding plaintiff's daily

activities) without reevaluating that finding in light of the

24

additional evidence of plaintiff's limited daily activities, including those specifically referenced in Field I.

Furthermore, the ALJ found that plaintiff's noncompliance with medical advice (i.e., to stop smoking, exercise, good diet, and maintain an ideal body weight) had an adverse effect on plaintiff's credibility (R. at 1130-1131).  Plaintiff argues that the ALJ could not rely on her failure to pursue recommended treatment without considering the Frey factors (Doc. 16 at 47). Defendant argues that the failure to follow medical advice can be taken into account in analyzing plaintiff's credibility without considering the Frey factors (Doc. 22 at 17-18).  Defendant's argument is without merit.  In the case of Essman v. Astrue, Case No. 09-4001-SAC (D. Kan. Dec. 16, 2009), the court held that:

> ...before the ALJ may rely on a claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justifiable excuse. Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993); Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987). This analysis applies when noncompliance with a physician's recommendation is used as part of the credibility determination. Piatt v. Barnhart, 231 F. Supp.2d 1128, 1129 (D. Kan. Nov. 15, 2002)(Robinson, J.); Silverson v. Barnhart, Case No. 01-1190-MLB (D. Kan. May 14, 2002)(Belot, J.); Goodwin v. Barnhart, 195 F. Supp. 2d 1293, 1294-1296 (D. Kan. (April 15, 2002)(Crow, S.J.).

Defendant contends that the <u>Frey</u> test is not applicable in this case.  However, the ALJ appears to have discounted plaintiff's credibility because he quit taking prescription medications.  Thus, this is not a situation where the <u>Frey</u> test is not required because the treatment or medication had not been prescribed, and the ALJ is simply considering what attempts the claimant made to relieve their pain.  <u>See</u> <u>McAfee v. Barnhart</u>, 324 F. Supp.2d 1191, 1201 (D. Kan. 2004); <u>Jesse v. Barnhart</u>, 323 F. Supp.2d 1100, 1108 (D. Kan. 2004); <u>Billups v. Barnhart</u>, 322 F. Supp.2d 1220, 1226 (D. Kan. 2004).

<u>Essman</u>, Doc. 23 at 20-21; <u>see</u> <u>Banks v. Apfel</u>, 2000 WL 1863382 at *13-14 (D. Kan. Nov. 13, 2000)(this court held that the ALJ erred in relying on claimant's failure to quit smoking as evidence of noncompliance and as a basis to find her incredible without making all the required findings).  Thus, the ALJ erroneously determined that noncompliance with medical advice adversely affected plaintiff's credibility without considering the <u>Frey</u> factors.

## V. Did the ALJ err by failing to consider the statements of third parties?

Plaintiff also argues that the ALJ erred by failing to consider the third party statements of plaintiff's mother (R. at 1346-1353) and husband (R. at 1368-1375).  The court has reviewed the third party statement of the mother and finds no error because the contents of the statement do not provide any significant support for plaintiff's assertions.  On the other

hand, the third party statement of the husband clearly supports plaintiff's assertions.

In <u>Blea v. Barnhart</u>, 466 F.3d 903 (10th Cir. 2006), the ALJ failed to discuss or consider the lay testimony of the claimant's wife; the ALJ's decision failed to mention any of the particulars of the testimony of claimant's wife, and in fact, never even mentioned the fact that she did testify regarding the nature and severity of her husband's impairments.  The court held as follows:

> In actuality, the ALJ is not required to make specific written findings of credibility only if "the written decision reflects that the ALJ considered the testimony." <u>Adams</u>, 93 F.3d at 715. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th Cir.1996).
>
> Here, the ALJ made no mention of Mrs. Blea's testimony, nor did he refer to the substance of her testimony anywhere in the written decision. Thus, it is not at all "clear that the ALJ considered [Mrs. Blea's] testimony in making his decision." <u>Adams</u>, 93 F.3d at 715. Additionally, Mrs. Blea's testimony regarding her husband's suicidal thoughts is not only uncontroverted; it serves to corroborate Dr. Padilla's psychiatric examination of Mr. Blea, where he stated that Mr. Blea has been dysthymic for years. [citation to record omitted] Thus, the ALJ's refusal to discuss why he rejected her testimony violates our court's precedent, and requires remand for the ALJ to incorporate Mrs. Blea's testimony into his decision. "Without the benefit of the ALJ's findings supported by the weighing

27

> of this relevant evidence, we cannot
> determine whether his conclusion[s] ... [are]
> supported by substantial evidence." Threet,
> 353 F.3d at 1190; see also Baker v. Bowen,
> 886 F.2d 289, 291 (10th Cir.1989) ("[W]here
> the record on appeal is unclear as to whether
> the ALJ applied the appropriate standard by
> considering all the evidence before him, the
> proper remedy is reversal and remand.").

Blea, 466 F.3d at 915. According to Blea, the ALJ, at a minimum, should indicate in his decision that he has considered the 3rd party testimony.

In the case before the court, the ALJ never mentioned the third party statement by plaintiff's husband. Because the decision by the ALJ does not indicate that the ALJ considered this evidence, which supports plaintiff's position, the proper remedy is reversal and remand.

## VI.  Did the ALJ err in his evaluation of plaintiff's depression?

The ALJ limited plaintiff in his RFC findings to simple unskilled work due to a loss of concentration, persistence, pace and memory (R. at 1125). The ALJ relied on a mental RFC assessment prepared by Dr. Bergmann-Harris (R. at 1719-1721, 1703-1715) and approved by Dr. Stern (R. at 1779) in which it was opined that plaintiff, in the four general categories, had mild limitations in activities of daily living, mild difficulties with social functioning, and moderate difficulties in maintaining, concentration, persistence, or pace (R. at 1713). In further evaluating plaintiff's limitations in 20 specific categories, Dr.

28

Bergmann-Harris and Dr. Stern found that plaintiff only had moderate limitations in the ability to understand, remember, and carry out detailed instructions (R. at 1719-1720).  Plaintiff cites to no other medical or other source evidence that disputes these opinions.  The ALJ's RFC findings are fully consistent with the state agency mental RFC assessment.  Therefore, the court finds no error by the ALJ in his mental RFC assessment.

**VII.  Should this case be reversed and remanded for further hearing, or reversed for an award of benefits?**

This court has found numerous errors by the ALJ in his analysis of the evidence in this case.  At step five, the burden of proof shifts to the Commissioner to show that the claimant retains sufficient RFC to perform work in the national economy. <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (2007); <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1261 (10th Cir. 2005).  In light of the numerous errors set forth above which cannot be deemed harmless, especially the clear error by the ALJ in incorporating analyses of the medical evidence and credibility from prior decisions which the court previously found to be erroneous, the court finds that the Commissioner has failed to meet their burden of demonstrating that the claimant retains sufficient RFC to perform work in the national economy.

When a decision of the Commissioner is reversed, it is within the court's discretion to remand either for further

29

administrative proceedings or for an immediate award of benefits.
When the defendant has failed to satisfy their burden of proof at
step five, and when there has been a long delay as a result of
the defendant's erroneous disposition of the proceedings, courts
can exercise their discretionary authority to remand for an
immediate award of benefits.  Ragland v. Shalala, 992 F.2d 1056,
1060 (10th Cir. 1993).  The defendant is not entitled to
adjudicate a case ad infinitum until it correctly applies the
proper legal standard and gathers evidence to support its
conclusion.  Sisco v. United States Dept. of Health & Human
Services, 10 F.3d 739, 746 (10th Cir. 1993).  A key factor in
remanding for further proceedings is whether it would serve a
useful purpose or would merely delay the receipt of benefits.
Harris v. Secretary of Health & Human Services, 821 F.2d 541, 545
(10th Cir. 1987).  Thus, relevant factors to consider are the
length of time the matter has been pending, and whether or not,
given the available evidence, remand for additional fact-finding
would serve any useful purpose, or would merely delay the receipt
of benefits.  Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir.
2006).

     The first issue for the court to consider is the amount of
time that the case has been pending.  Plaintiff first applied for
disability benefits on July 31, 2002; the present application has
been pending since June 13, 2003 (R. at 13).  Thus, plaintiff has

been seeking benefits for 9 years, and the present application
has been pending for 8 years.  As noted above, the Commissioner
is not entitled to adjudicate a case ad infinitum until it
correctly applies the proper legal standard and gathers evidence
to support its conclusion.

     The second issue for the court to consider is whether, given
the available evidence, remand for additional fact-finding would
serve any useful purpose, or would merely delay the receipt of
benefits.  The ALJ made RFC findings limiting plaintiff to
sedentary work.  In the record, there is opinion evidence from a
treating physician, Dr. Spangler, that plaintiff is disabled (R.
at 358-361).  On the other hand, the record also contains
opinions from three non-examining physicians:

> 1) A 2003 state agency RFC assessment limited
> plaintiff to medium work (R. at 183-190);
> this opinion was given some, but not
> substantial weight by the ALJ.
>
> 2) Dr. Axline testified in 2008 that he found
> no basis for Dr. Spangler's opinion that
> plaintiff could only sit for 2 hours. Dr.
> Axline limited plaintiff to lifting no more
> than 25 pounds with no limit on sitting as
> long as plaintiff is able to get up every
> once in a while (R. at 1098-1108).  The ALJ
> gave significant weight to this opinion.
>
> 3) Dr. Brovender testified in 2009 that he
> generally did not agree with the limitations
> set forth by Dr. Spangler; however, he
> offered no opinions regarding plaintiff's RFC
> (R. at 2042-2050).  The ALJ gave significant
> weight to this opinion.

Both Dr. Axline and Dr. Brovender are orthopedic surgeons (R. at

31

1098, 2043).  In addition, the record also contains the following
opinion from a consultative physician who examined the plaintiff:

> 1.  Dr. Curtis performed a consultative exam
> on December 7, 2007 (R. at 1078-1082).   He
> opined that plaintiff had limitations
> basically consistent with light work (R. at
> 1083-1088).   The ALJ gave some, but less than
> substantial weight to this opinion because
> Dr. Curtis indicated that there had been no
> back evaluations since 2003, when in fact
> there had been such evaluations since that
> date (R. at 1132).

On the one hand, this case has been pending for 9 years; on
the other hand, there are four medical opinions that do not
support the opinion of Dr. Spangler that plaintiff has
limitations which prevent her from working.  The court will
therefore review 10th Circuit cases that have discussed whether
to remand the case for further hearing or remand for an award of
benefits.

In a number of cases, the 10th Circuit has reversed the
decision of the Commissioner and remanded the case for an award
of benefits.  Groberg v. Astrue, 415 Fed. Appx. 65, 73 (10th Cir.
Feb. 17, 2011 (given a proper analysis and evaluation of his
mental impairments, there is no reasonable probability that
Groberg would be denied benefits); Madron v. Astrue, 311 Fed.
Appx. 170, 182 (10th Cir. Feb. 11, 2009)(giving due consideration
to Ms. Madron's significant back pain, there is no reasonable
probability that she would be denied benefits); Huffman v.
Astrue, 290 Fed. Appx. 87, 89-90 (10th Cir. July 11, 2008)(six

years have passed since claimant applied for benefits; given the lengthy delay that has occurred from the Commissioner's erroneous disposition of the matter, the court exercised its discretion to award benefits); Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006)(given the lack of evidence that she would not be disabled in he absence of drug or alcohol use, a remand would serve no useful purpose); Sisco v. U.S. Dept. of HHS, 10 F.3d 739, 746 (10th Cir. 1993)(case pending with Secretary for 8 years; plaintiff exceeded what a claimant can legitimately be expected to prove to collect benefits; furthermore, the record revealed that the ALJ resented plaintiff's persistence, refused to take her case seriously, and at times treated her claim with indifference or disrespect); Williams v. Bowen, 844 F.2d 748, 760 (10th Cir. 1988)(the record fully supports a determination that claimant is disabled); see also Graham v. Sullivan, 794 F. Supp. 1045, 1053 (D. Kan. 1992)(Crow, J., several physicians, including treating physician, opined that plaintiff is disabled, and their opinions stand uncontroverted).

In other cases, the 10th Circuit reversed the decision of the Commissioner and remanded the case for further hearing. Hamby v. Astrue, 260 Fed. Appx. 108, 113 (10th Cir. Jan. 7, 2008)(based on the record, the court was not convinced that a remand would be an exercise in futility); Tucker v. Barnhart, 201 Fed. Appx. 617, 625 (10th Cir. Oct. 19, 2006)(even though case

33

pending for 9 years, additional fact-finding and consideration by ALJ appropriate in the case); Miller v. Chater, 99 F.2d 972, 978 (10th Cir. 1996)(in light of use of incorrect legal framework and other errors, and because the appeals court does not reweigh the evidence, the case was remanded for further proceedings even though court acknowledged that there had already been four administrative hearings).

In five of the seven cases cited above in which the court remanded for an award of benefits, the court found that the evidence clearly established that plaintiff was disabled. By contrast, in Hamby, the court found that, based on the facts of the case, a remand would not be an exercise in futility. In Tucker, the court remanded the case for further hearing even though it had been pending for 9 years because the court found that additional fact-finding and consideration by the ALJ would be appropriate. In Miller, the court remanded the case for further hearing despite various errors, noting that the appeals court does not reweigh the evidence. In the case presently before the court (Field), the evidence does not clearly establish that plaintiff is disabled. Four physicians, including two specialists, have provided opinions that conflict with the opinion of the one treating physician who has opined that plaintiff cannot work because of her limitations. Although the ALJ committed numerous errors in his analysis which requires that

34

the decision of the Commissioner be reversed, and even though the case has been pending for 9 years, a remand in this case in order for the Commissioner to properly consider and analyze the evidence is warranted on the facts of this case.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 2nd day of August, 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge